PER CURIAM.[1]
The Legal Environmental Assistance Foundation, Inc. (“LEAF”), and Guy Moore appeal from a judgment of the Montgomery Circuit Court affirming an order of the Alabama Environmental Management Commission (“EMC”). The EMC’s order denied LEAF’S and Moore’s contest of the decision of the Alabama Department of Environmental Management (“ADEM”) to reissue a NPDES (National Pollutant Discharge Elimination System) permit held by Sloss Industries Corporation.
In September 1993, ADEM issued NPDES permit no. AL0003247 to Sloss. The permit authorized Sloss to discharge certain pollutants into Fivemile Creek in Jefferson County. Moore, who is a member of LEAF, an organization concerned with environmental protection, owns and resides on property that adjoins Fivemile Creek and that is downstream from Sloss’s discharge point. Moore uses Fivemile Creek for fishing and other recreational uses.
Sloss’s 1993 permit was due to expire in September 1998. The 1993 permit stated that if Sloss desired to continue to discharge pollutants after the expiration date of the permit it must file a “complete application” for reissuance of the permit “at least 180 days prior to its expiration.” See Ala. Admin. Code (ADEM), r. 335-6-6-.06 (“The terms and conditions of an expiring NPDES permit are automatically extended until the effective date of a new NPDES permit if the permittee has submitted a timely and complete application for reissuance of an NPDES permit and the delay in permit issuance has not been caused by the actions of the permittee .... ” (emphasis added)). The 1993 permit further stated that “[fjailure of the permittee to apply for reissuance at least 180 days prior to permit expiration will void the automatic continuation of the expiring permit provided by [Ala. Admin. Code (ADEM), r. 335-6-6-.06].” (Emphasis added.)
In April 1998, Sloss filed an application with ADEM requesting that its discharge permit be reissued.[2] Thereafter, ADEM requested additional information from Sloss concerning its permit-renewal application, and ADEM and Sloss engaged in discussions concerning Sloss’s alleged failure to comply with the terms of the 1993 permit. In part, the discussions resulted in consent decrees between ADEM and Sloss in 2001, 2002, and 2003, pursuant to which Sloss agreed to pay substantial penalties and agreed to comply with pertinent 1993 permit terms until its permit might *412 be reissued.[3]
On February 25, 2003, while Sloss’s permit-renewal application was still pending, ADEM reclassified Fivemile Creek from the “Agricultural and Industrial Water Supply” use classification to the “Fish and Wildlife” use classification. The reclassification resulted in the application of more stringent water-quality standards for Fi-vemile Creek, effective April 3, 2003. On March 3, 2003, in response to the reclassification of Fivemile Creek, Sloss submitted a revised permit-renewal application.
ADEM’s regulations provide that ADEM may grant a permittee with an existing permit up to three years to comply with newly adopted water-quality standards for a particular state body of water. See Ala. Admin. Code (ADEM), r. 335-6-10-.05. After ADEM received Sloss’s revised permit-renewal application, and after it reviewed Sloss’s files, ADEM concluded that Sloss’s permit should be renewed and that Sloss should be allowed up to three years to fully comply with certain of the newly adopted water-quality standards applicable to Fivemile Creek. Thereafter, ADEM proposed to issue Sloss a renewed permit, subject to a compliance schedule, and it prepared a draft of the permit. In pertinent part, the draft permit authorized Sloss to discharge effluent containing certain pollutants at discharge limits that are appropriate for waters classified for use as an “Agricultural and Industrial Water Supply.” Among other things, the draft permit also required that by February 25, 2006, three years from the date that ADEM reclassified Fivemile Creek, Sloss’s discharge effluent must comply with water-quality standards deemed appropriate for the Fish and Wildlife use classification.[4]
On June 17, 2003, ADEM issued a “Fact Sheet” concerning Sloss’s proposed permit renewal. The Fact Sheet included a copy *413 of the draft permit and the permit-renewal application, as revised. See Ala. Admin. Code (ADEM), r. 335-6-6-.20 (describing the requirements for the Fact Sheet). The Fact Sheet specifically stated that
“[Sloss] is being allowed three years to comply with the Fish & Wildlife requirements for Available Cyanide and Chronic Toxicity because of the significant economic impact and extensive time period required for implementation of additional treatment systems necessary to meet these more stringent standards.”
ADEM gave public notice of its intent to renew Sloss’s permit, subject to a compliance schedule, and it requested public comment. See Ala. Admin. Code (ADEM), r. 335-6-6-.21 (the public notice includes information concerning who the public may contact to obtain copies of the Fact Sheet, the draft permit, and the permit application).
During the public-comment period, LEAF and Moore filed comments with ADEM. Moore commented that the permit should be denied because of Sloss’s past noncompliance with the 1993 permit and its lack of assurance of future compliance. LEAF made numerous comments, including, in part, that Sloss’s permit-renewal application “fail[ed] to identify corporate officers, administrative complaints, notices of violations, or administrative orders, or litigation” as required by Ala. Admin. Code (ADEM), r. 335-6-6-.08(l)(f) and r. 335-6-6-.08(l)(g);[5] see also Ala. Admin. Code (ADEM), r. 335-6-6-.02(b) (defining “application” as “forms, and additional information that are required by Rule 335-6-6-.08 to be submitted when applying for an NPDES permit”). According to LEAF, Sloss’s “incomplete” permit application did not result in an automatic extension of the 1993 permit under r. 335-6-6-.06. Therefore, according to LEAF, Sloss’s permit automatically expired in September 1998. Based on the foregoing conclusion, LEAF contended that Sloss was thus not an existing permittee to whom ADEM could grant a three-year compliance schedule under r. 335-6-10-.05 and that ADEM should require Sloss to immediately comply with the more stringent water-quality standards.
ADEM responded to LEAF’S and Moore’s comments, and it concluded that Sloss’s permit-renewal application was acceptable. On June 25, 2003, the same date that the 2003 consent order was executed, ADEM reissued Sloss’s permit.
LEAF and Moore filed a permit contest with the EMC and-requested a hearing to contest the reissuance of Sloss’s permit. In part, LEAF and Moore alleged that ADEM should not have granted Sloss three years to comply with the more stringent water-quality standards at issue because Sloss had submitted an “incomplete” permit-renewal application. LEAF and Moore did not seek to have Sloss’s permit rescinded; they sought only to have the permit modified to delete the three-year compliance schedule and to require immediate compliance with the more stringent water-quality standards.
Sloss, the Business Council of Alabama, Inc., and the Water Works and Sanitary Sewer Board of the City of Montgomery intervened in LEAF’S and Moore’s permit contest.
In December 2003, an administrative law judge (“the ALJ”) for the EMC conducted a three-day evidentiary hearing as to LEAF’S and Moore’s permit contest. On May 6, 2004, the ALJ entered an order *414 recommending that the EMC approve ADEM’s issuance of the renewed permit. As to the alleged problems with ADEM’s processing of Sloss’s “incomplete” application, the ALJ concluded that, based on the evidence presented, LEAF and Moore had not demonstrated that they had suffered a threatened or actual injury as a result of ADEM’s actions; thus, the ALJ concluded, they had no standing to pursue an administrative appeal. See Ala.Code 1975, § 22-22A-7(c) (“any person aggrieved by an administrative action of [ADEM] shall be entitled to a hearing before the [EMC] or its designated hearing officer”); Ala. Admin. Code (ADEM), r. 335-2-l-.02(b) (“ ‘aggrieved’ means having suffered a threatened or actual injury in fact”). The ALJ based his conclusion that LEAF and Moore lacked standing as to the alleged procedural irregularities on two grounds: (1) that LEAF and Moore had not demonstrated that the terms of Sloss’s renewed permit had caused or would cause an actual or threatened injury to them, as opposed to a conjectural injury, and (2) that LEAF and Moore had not demonstrated that they had suffered a substantive injury as a result of the alleged procedural deficiency at issue, i.e., ADEM’s conclusion that the permit-renewal application was sufficiently complete to proceed with the permit-renewal process. According to the ALJ, LEAF and Moore failed to demonstrate any causal link between ADEM’s alleged procedural error and any substantive problem with the terms of the renewed permit.
The ALJ also concluded that ADEM’s decision to process Sloss’s “incomplete” permit-renewal application was a matter of ADEM’s internal procedure, not an “administrative action” that was the subject to the EMC’s jurisdiction. See Ala.Code 1975, § 22-22A-7(c) (“any person aggrieved by an administrative action of [ADEM] shall be entitled to a hearing before the [EMC]”); Ala.Code 1975, § 22-22A-3(8) (in part, defining an “administrative action” as “[t]he issuance, modification, repeal or denial of any permit”). The ALJ stated that “[t]he relevant issue is whether the reissued permit meets all the requirements for issuing an NPDES permit, especially whether that permit is protective of water quality.”
Furthermore, the ALJ concluded that LEAF and Moore’s requested relief was inconsistent with their claim. According to LEAF and Moore, Sloss’s failure to file a complete permit-renewal application resulted in the automatic expiration of the permit. The ALJ noted that ADEM had no authority to “modify” or “renew” an expired permit. Yet, LEAF and Moore insisted that the EMC modify Sloss’s permit by deleting the compliance schedule, not that the EMC revoke the permit and require Sloss to apply for a new permit (which would be subject to certain regulatory criteria not pertinent to a reissued permit and which would not automatically qualify for a three-year compliance schedule).
On June 29, 2004, after receiving written submissions from the parties, the EMC entered an order adopting the ALJ’s recommendation; the EMC’s decision to adopt the ALJ’s recommendation was unanimous.
LEAF and Moore appealed the EMC’s decision to the Montgomery Circuit Court. See Ala.Code 1975, § 22-22A-7(c)(6). The circuit court reviewed the administrative record and written briefs from the parties, and it heard oral argument from the parties. On March 30, 2005, it entered a judgment affirming the EMC’s order. The circuit court specifically declined to address the issue of LEAF’S and Moore’s standing. Instead, it concluded that “the question whether the permit application *415 was complete is an internal procedure to be determined by ADEM” and that “the EMC’s interpretation of the limits of its jurisdiction with regard to the hearing of appeals of administrative action is reasonable and entitled to judicial deference.” The circuit court also concluded that the claim regarding the alleged procedural error committed by ADEM, i.e., processing an allegedly “incomplete” permit application, was moot because the hearing before the EMC was de novo and the EMC’s charge was to determine whether the permit as issued, including the compliance schedule, was substantively appropriate. The circuit court also agreed with the ALJ’s conclusion that LEAF and Moore’s requested relief was inconsistent with their claim. Further, as to the completeness of the permit-renewal application, the circuit court noted that LEAF and Moore had not demonstrated that they were “injured or harmed” by the omitted information and that the evidence reflected that ADEM had the “minimum amount of information to process” the permit-renewal application. The circuit court stated:
“[E]ven if this Court determined that [LEAF and Moore] had standing to challenge the [permit-renewal application] for completeness, and that the EMC had jurisdiction to conduct such a review, the Court concludes that [LEAF and Moore] have failed to submit record evidence to support [their] argument that the purported omissions for the [permit-renewal application] impacted the development of the Reissued Permit.”
On appeal, LEAF and Moore contend that the circuit court’s judgment affirming the EMC’s order approving the reissuance of Sloss’s permit is due to be reversed because, they say, it is based on erroneous conclusions of law regarding the EMC’s jurisdiction, mootness, standing, the inconsistency of their claim and their requested relief, and the interpretation and application of ADEM’s regulations.
We need not render an opinion as to the foregoing issues, because LEAF and Moore’s appeal itself is moot. The only harm that LEAF and Moore alleged that they suffered as a result of the alleged procedural irregularity at issue is that Sloss was given a three-year compliance schedule that permitted it to discharge pollutants in excess of the Fish and Wildlife use classification criteria; the three-year period ended on February 26, 2006. The only relief that LEAF and Moore sought was the modification by ADEM of Sloss’s permit so as to delete the three-year compliance schedule and require immediate compliance by Sloss with the more stringent water-quality standards at issue. They specifically did not seek the revocation of Sloss’s permit, and they abandoned all other arguments as to the terms and conditions of Sloss’s permit. Since February 26, 2006, has passed, no decision of this court can provide LEAF and Moore with the relief they requested. Consequently, their appeal is moot and it is due to be dismissed. See Gross v. QMS, Inc., 669 So.2d 839 (Ala.1995).
APPEAL DISMISSED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK and BRYAN, JJ., recuse themselves.

. This case was reassigned on June 27, 2006.

. On appeal, the parties argue about whether Sloss's permit-renewal application was sufficiently complete. LEAF and Moore conceded during public comment that Sloss's permit-renewal application was timely filed. Also, LEAF and Moore did not argue before the EMC, and they do not contend on appeal, that Sloss's actions caused a delay in permit issuance.

. By its terms, the execution of the 2003 consent decree (the decree was executed on June 25, 2003) was intended by ADEM and Sloss to coincide with the issuance of Sloss's renewed permit. The 2003 consent decree between ADEM and Sloss specifically provided that "[i]n accordance with ADEM Admin. Rule 335-6-10-.05 [Sloss] must attain compliance with the [Fish and Wildlife] classification within three years from [February 25, 2003]." The 2003 consent decree also stated that it was to be "made available to the public for review and comment for 30 days,” after which Sloss was to submit an acceptable compliance plan that would bring it into compliance with the Fish and Wildlife use classification standards, including those standards "for which a three-year compliance schedule has been given under the effective permit.”
It is undisputed that when ADEM reissued Sloss's permit it required Sloss to immediately comply with some Fish and Wildlife use classification standards, apparently because Sloss was capable of complying with those more stringent standards at the time the permit was reissued. There was no evidence at trial indicating that Sloss was capable of currently complying with the standards that were subject to the three-year compliance schedule. The only evidence on that issue was that it would likely take the entire three years for Sloss to determine what technology could be used to meet the more stringent standards and to determine how to implement that technology so as to ensure ongoing compliance.

. Although LEAF and Moore argued before the EMC that certain of the permit discharge limits were insufficient to meet pertinent water-quality standards, LEAF and Moore do not raise that issue on appeal.